982 So.2d 704 (2008)
BAYFRONT MEDICAL CENTER, INC., Appellant,
v.
FLORIDA BIRTH-RELATED NEUROLOGICAL INJURY COMPENSATION ASSOCIATION; and Mike Kocher and Lynn Kocher, as parents and natural guardians of Christopher Kocher, Appellees.
No. 2D03-5156.
District Court of Appeal of Florida, Second District.
January 16, 2008.
Rehearing Denied June 3, 2008.
David S. Nelson of Barr, Murman, Tonelli, Slother & Sleet, Tampa, for Appellant.
Wilbur E. Brewton, General Counsel, and Kelly B. Plante of Roetzel & Andress, P.A., Tallahassee for Appellee Florida Birth-Related Neurological Injury Compensation Association.
James L. Ferraro and Dino G. Galardi of Ferraro & Associates, P.A., Coral Gables, for Appellees Kocher.

*705 ON REMAND FROM THE SUPREME COURT OF FLORIDA

DAVIS, Judge.
Bayfront Medical Center, Inc. (Bayfront) challenges the amended final order issued by the administrative law judge (ALJ) on May 14, 2001. By the order, the ALJ determined that the injuries that the infant, Christopher Kocher, incurred during delivery were compensable under the Florida Birth-Related Neurological Injury Compensation Plan (Plan)[1] and that the delivering physician was a participant in the Plan. However, the ALJ further determined that although the physician provided the mother, Lynn Kocher, with the statutorily required notice[2] that he was a participant in the Plan, the failure of Bayfront, the hospital where the delivery occurred, to supply Mrs. Kocher with notice of the existence of the Plan precluded application of the exclusivity and immunity provisions of the Plan.[3] Consequently, the ALJ's order stated that Mike and Lynn Kocher, as claimants under the Plan, had the option of either accepting benefits pursuant to the Plan or pursuing a medical malpractice claim against the healthcare providers involved in the delivery. Bayfront now challenges the ALJ's legal conclusion that Bayfront is not entitled to the immunity provided by the Plan.
This court has reviewed this matter twice previously. On our first consideration, we concluded that the ALJ was without jurisdiction to decide any matters beyond the determination that the injury was compensable. See Bayfront Med. Ctr., Inc. v. Div. of Admin. Hearings, 841 So.2d 626 (Fla. 2d DCA 2003) (Bayfront I). As such, we remanded the case for the ALJ to amend his final order to remove those provisions related to the election of remedies and the Plan's exclusivity.
On remand, the ALJ did remove several of the references but stated the following in his amended final order: "Given the foregoing, it must be resolved that while the participating physician gave notice, the hospital did not, and its failure to give notice may not be excused, as harmless." Upon review of the amended final order, this court restated its prior conclusion that the ALJ was without jurisdiction to reach a legal conclusion regarding the effect of a party's failure to provide the statutorily required notice. See Bayfront Med. Ctr., Inc. v. Fla. Birth-Related Neurological Injury Comp. Ass'n, 893 So.2d 636 (Fla. 2d DCA 2005) (Bayfront II). We again remanded the case and directed the ALJ to remove the conclusion that the failure of notice was not harmless. Additionally, we directed the ALJ's attention to this court's opinion in All Children's Hospital, Inc. v. Department of Administrative Hearings, 863 So.2d 450 (Fla. 2d DCA 2004), in which this court concluded that the ALJ's jurisdiction was limited to the determination of whether the injury was compensable under *706 the Plan. We further pointed out that in All Children's Hospital, this court specifically concluded that nothing in the statute provided the ALJ with jurisdiction to determine whether sufficient statutory notice was given or whether a provider was entitled to immunity under the Plan. Our instruction on remand was to again amend the final order to make it consistent with our opinion.
However, in Florida Birth-Related Neurological Injury Compensation Ass'n v. Florida Division of Administrative Hearings, 948 So.2d 705 (Fla.2007), the Florida Supreme Court quashed our All Children's Hospital decision, concluding that the issues of notice and immunity are properly within the jurisdiction of the ALJ.[4] Subsequently, the supreme court quashed our decision in Bayfront II and remanded the matter to this court for reconsideration. Accordingly, with the law now established that the ALJ does, in fact, have jurisdiction to consider the issues of notice and the application of the Plan's immunity provision, we now review the ALJ's conclusion that Bayfront's failure to provide Mrs. Kocher with notice of the Plan precluded the application of the immunity provision even though the participating physician provided Mrs. Kocher with notice of his participation in the Plan.
The findings of fact included in the ALJ's final order were based on the stipulation of the parties. There is no disagreement that the injuries involved were compensable under the Plan, that the delivering physician was a participant in the Plan, that the physician gave notice of his participation in the Plan to Mrs. Kocher,[5] and that Bayfront did not provide further notice to Mrs. Kocher. The ALJ's legal conclusion was based on his analysis of the statute requiring that notice be given as a condition precedent to the application of the immunity provision of the Plan. See § 766.316, Fla. Stat. (1997). Accordingly, we review the ALJ's decision de novo. See Schur v. Fla. Birth-Related Neurological Injury Comp. Ass'n, 832 So.2d 188 (Fla. 1st DCA 2002).
The legislative intent in developing the Plan was "to provide compensation, on a no-fault basis, for a limited class of catastrophic injuries that result in unusually high costs for custodial care and rehabilitation." § 766.301(2). The Plan provides for the payment of claims without the necessity of proving fault. § 766.303(1). The Plan is funded by assessments levied against all physicians licensed to practice in the state and all hospitals licensed under chapter 395, Florida Statutes. § 766.314(4). However, physicians who choose to participate in the coverage provided by the Plan are *707 required to pay an additional annual assessment. § 766.314(4), (5). Section 766.303(2) provides that if injuries resulting from the delivery of an infant meet the statutory definition of a "[b]irth-related neurological injury," § 766.302, and if the delivering physician is a participant in the Plan, the remedy provided by the Plan is the exclusive remedy available to the infant and his or her parents. Accordingly, where this provision applies, the physician is immune from civil suit.
However, the Plan provides for two exceptions to this exclusivity provision. First, the provision does not apply when there is "clear and convincing evidence of bad faith or malicious purpose or willful and wanton disregard of human rights, safety, or property." § 766.303(2). There are no allegations in this case that suggest the applicability of this exception.
Rather, this case involves the second exception, the requirement found in section 766.316 that notice of the Plan be given to the expectant mother by "[e]ach hospital with a participating physician on its staff and each participating physician." The Florida Supreme Court has interpreted section 766.316 to require as a condition precedent to the exclusivity of the Plan that such notice be supplied to parents prior to the delivery of the child. See Galen of Fla. v. Braniff, 696 So.2d 308 (Fla.1997). Should the healthcare provider fail to give the required notice, the exclusivity provision of the Plan does not apply. Id. That is, the claimant has the option to either accept the benefits of the Plan or to pursue a civil claim.
In considering the Kochers' Florida Birth-Related Neurological Injury Compensation Association (NICA) petition, the ALJ here concluded that the exclusivity provision of the Plan did not apply because Bayfront failed to provide the notice required by section 766.316. The ALJ concluded that the "clear, unambiguous language" of the statute requires that both the hospital and the participating physician give notice. He further concluded that the immunity provided by the statute was not severable, that is, either all the providers enjoyed the immunity or all were denied the immunity. Finally, he concluded that notice given by one provider does not satisfy the statutory requirement that notice be provided by the other provider. The ALJ cited Board of Regents v. Athey, 694 So.2d 46 (Fla. 1st DCA 1997), as support for this conclusion.[6] Accordingly, the ALJ concluded that due to Bayfront's failure to give the required notice, the Plan was not the exclusive remedy available to the Kochers. Rather, the Kochers had the option to either accept the benefits payable under the Plan or pursue a civil action against the healthcare providers.
On appeal, Bayfront raises two challenges to the ALJ's conclusion. First, Bayfront argues that the Galen court's reading and application of section 766.316 suggests that the physician's predelivery notice of his participation in the Plan alone  without further notice from the hospital  satisfies the legislative intent of the statute. Second, Bayfront contends that the plain language of the statute does not require two notices be given but rather only that the expectant mother be placed on notice that her physician is a participant in the *708 Plan. Because we agree with Bayfront's arguments, we reverse.
The Supreme Court of Florida provided an extensive analysis of the Plan's notice requirement in Galen, 696 So.2d 308, which involved the timing of the notice. In that case, the healthcare providers, who had failed to provide the expectant mother with predelivery notice, argued that such was not required by the plain reading of the statute. After analyzing the purpose of the statutorily required notice, the supreme court came to the following conclusion: "This language makes clear that the purpose of the notice is to give an obstetrical patient an opportunity to make an informed choice between using a health care provider participating in the NICA plan or using a provider who is not a participant and thereby preserving her civil remedies." Id. at 309-10. The court also observed that the "only logical reading of the statute" makes it clear that the notice must be given at such a time that would allow the patient to either remain in the care of the participating physician or seek prenatal care from a nonparticipating physician. Id. at 309. The court concluded "that as a condition precedent to invoking the Florida Birth-Related Neurological Injury Compensation Plan as a patient's exclusive remedy, health care providers must, when practicable, give their obstetrical patients notice of their participation in the plan a reasonable time prior to delivery." Id.
Applying the Galen reasoning to the facts of this case, we conclude that any notice given by Bayfront would have been meaningless. First, the notice provided to Mrs. Kocher by her physician put her on notice of her option to either continue in his care and be covered by the Plan or seek care from a nonparticipating physician. The purpose of the notice statute, as determined by the Florida Supreme Court in Galen, was satisfied. Any additional notice provided by Bayfront would not have enhanced Mrs. Kocher's understanding of her options.
Additionally, unlike the option Mrs. Kocher enjoyed with regard to the selection of a nonparticipating physician, she could not have chosen to seek services at a hospital that was not covered by the Plan. The statute does not provide any hospital with the option of participating or declining to participate in the Plan; rather, all hospitals are assessed equally. See § 766.314(4)(a), (5)(a). Further, nothing in the statute or case law suggests that it is a hospital's duty to advise a patient that her physician is or is not a participating physician. Hospitals with participating physicians on staff are simply required to provide obstetrical patients with the NICA-prepared "Peace of Mind" brochure, see § 766.316 (requiring that notice be given on forms furnished by NICA), which does not address the participation status of any particular physician, see Jackson v. Fla. Birth-Related Neurological Injury Comp. Ass'n, 932 So.2d 1125, 1128 (Fla. 5th DCA 2006) ("The pamphlet contains a clear and concise explanation of a patient's rights and limitations under the NICA plan, as is required by the terms of the statute.").
Accordingly, we conclude that a physician's predelivery notice of his participation in the Plan satisfies the statutory notice requirement as defined by the Florida Supreme Court in Galen, 696 So.2d 308. Therefore, in the instant case, the statute was satisfied by the notice provided to Mrs. Kocher by her physician. Moreover, we agree that a plain reading of the statute does not require notice from Bayfront. The statute does not mandate that both the hospital and physician must give notice; rather, the statute qualifies which hospitals must give notice. That is, the only hospitals that are statutorily required *709 to give notice are those "with a participating physician on . . . staff." § 766.316. Although the statute does not define this term, a plain reading of this language suggests that a hospital is required to provide such notice to an obstetrical patient if that patient's delivering physician is a Plan participant and is also an employee of the hospital, as opposed to a physician who merely enjoys staff privileges at the hospital. Nothing in the instant ALJ's amended final order indicates that Bayfront is a hospital with a participating physician on staff or that Mrs. Kocher's physician is an employee of Bayfront. As such, we conclude that Bayfront was not statutorily required to provide Mrs. Kocher with additional notice.
Our conclusion is consistent with the legislative intent of the statute. The legislature specifically found that the problem that the Plan was to address was the crisis in medical malpractice insurance premiums for physicians practicing obstetrics. See § 766.301(1)(a). The Plan was the legislature's attempt to allow these physicians to choose to pay assessments to the Plan, which would then allow injured patients a somewhat limited recovery in exchange for the reduced time and expense they would ordinarily expend attempting to prove negligence in a civil malpractice action. The unstated but intended result is that the participating physician may either reduce or eliminate his malpractice coverage for neurological birth-related injuries by choosing to participate in the Plan and pay the higher assessments described in section 766.314.
However, in the instant case, the ALJ's reading of the statute creates an untenable situation where a participating physician who has chosen to pay the higher Plan assessments in order to avail himself of the exclusivity provision of the Plan would at the same time be forced to carry costly malpractice insurance to protect against a hospital's failure to provide notice. This would be contrary to the legislative purpose of the Plan. See § 766.301(1)(c) ("Because obstetric services are essential, it is incumbent upon the Legislature to provide a plan designed to result in the stabilization and reduction of malpractice insurance premiums for providers of such services in Florida."). As such, we decline to subscribe to the ALJ's interpretation of the statute. See Patry v. Capps, 633 So.2d 9, 11 (Fla.1994) ("Dr. Capps correctly points out that as a general rule this Court must give effect to the plain and unambiguous language of a statute. However, it is equally clear that a literal interpretation is not required when such an interpretation would lead to an unreasonable or ridiculous conclusion and there are cogent reasons to believe the letter of the law does not accurately reflect the legislative intent.").
Finally, we acknowledge that the language of Athey, 694 So.2d 46, quoted by the ALJ suggests that our conclusion is in conflict with that First District opinion. However, we note that the issue in Athey was whether the facts supported the waiver of predelivery notice. Because the sufficiency of Mrs. Kocher's physician's predelivery notice of participation was not at issue here, the Athey language included in the ALJ's order was dicta.
In conclusion, we reverse the ALJ's finding that the Kochers have the right to reject the Plan's coverage, and we remand for compliance with the payment provisions of the ALJ's amended final order. However, recognizing that our conclusion is based on an extension of the reasoning in Galen, 696 So.2d 308, and our statutory analysis of the Plan's notice provision, we certify the following question as one of great public importance:

*710 IN LIGHT OF THE FLORIDA SUPREME COURT'S DECISION IN GALEN OF FLORIDA v. BRANIFF, 696 So.2d 308 (Fla.1997), DOES A PHYSICIAN'S PREDELIVERY NOTICE TO HIS OR HER PATIENT OF THE PLAN AND HIS OR HER PARTICIPATION IN THE PLAN SATISFY THE NOTICE REQUIREMENTS OF SECTION 766.316, FLORIDA STATUTES (1997), IF THE HOSPITAL WHERE THE DELIVERY TAKES PLACE FAILS TO PROVIDE NOTICE OF ANY KIND?
Reversed and remanded; question certified.
NORTHCUTT, C.J., and KELLY, J., Concur.
NOTES
[1] §§ 766.301-.316, Fla. Stat. (1997).
[2] See § 766.316 ("Each hospital with a participating physician on its staff and each participating physician, other than residents, assistant residents, and interns deemed to be participating physicians under s. 766.314(4)(c) . . . shall provide notice to the obstetrical patients thereof as to the limited no-fault alternative for birth-related neurological injuries.").
[3] See § 766.303(2) ("The rights and remedies granted by this [P]lan on account of a birth-related neurological injury shall exclude all other rights and remedies of such infant, her or his personal representative, parents, dependents, and next of kin . . . against any person or entity directly involved with the labor, delivery, or immediate postdelivery resuscitation during which such injury occurs, arising out of or related to a medical malpractice claim with respect to such injury. . . ." (emphasis added)).
[4] The First District Court of Appeal determined that the issues of notice and immunity are within the ALJ's jurisdiction in Tabb v. Florida Birth-Related Neurological Injury Compensation Ass'n, 880 So.2d 1253 (Fla. 1st DCA 2004). In reaching that conclusion, the First District quoted from O'Leary v. Florida Birth-Related Neurological Injury Compensation Ass'n, 757 So.2d 624, 627 (Fla. 5th DCA 2000), as follows: "[A]ny issue raising the immunity of a health provider, including the issue of whether the health provider satisfied the notice requirements of the Plan is an issue to be decided by the administrative law judge as one which relates to the question of whether the claim is compensable under the Plan." Tabb, 880 So.2d at 1257 (alteration in original). In quashing All Children's Hospital, 863 So.2d 450, the Florida Supreme Court quoted the above language and adopted the Tabb analysis. See Fla. Birth-Related Neurological Injury Comp. Ass'n v. Fla. Div. of Admin. Hearings, 948 So.2d 705, 716 (Fla.2007).
[5] Although Mrs. Kocher denies remembering the physician's conversation with her regarding the Plan, she acknowledged the written statement that she signed indicating that the physician was in fact a participant in the Plan.
[6] The ALJ included the following quote in his order: "Under section 766.316, therefore, notice on behalf of the hospital will not by itself satisfy the notice requirement imposed on the participating physician(s) involved in the delivery." Athey, 694 So.2d at 49. The ALJ then parenthetically noted: "Conversely, it reasonably follows, notice on behalf of the participating physician will not by itself satisfy the notice requirement imposed on the hospital."