POLSTON, J.
 

 This consolidated case is before the Court for review of
 
 All Children’s Hospital, Inc. v. Department of Administrative Hearings,
 
 989 So.2d 2 (Fla. 2d DCA 2008), and
 
 Bayfront Medical Center, Inc. v. Florida Birth-Related Neurological Injury Compensation Ass’n,
 
 982 So.2d 704 (Fla. 2d DCA 2008). In both opinions the Second District Court of Appeal ruled upon the following question, which the court certified to be of great public importance:
 

 IN LIGHT OF THE FLORIDA SUPREME COURT’S DECISION IN
 
 GALEN OF FLORIDA, INC. V. BRANIFF,
 
 696 So.2d 308 (Fla.1997), DOES A PHYSICIAN’S PREDELIV-ERY NOTICE TO HIS OR HER PATIENT OF THE PLAN AND HIS OR HER PARTICIPATION IN THE PLAN SATISFY THE NOTICE REQUIREMENTS OF SECTION 766.316, FLORIDA STATUTES (1997), IF THE HOSPITAL WHERE THE DELIVERY TAKES PLACE FAILS TO PROVIDE NOTICE OF ANY KIND?
 

 All Children’s,
 
 989 So.2d at 4;
 
 Bayfront,
 
 982 So.2d at 710.
 
 [1]
 

 We answer the certified question in the negative and quash the Second District’s decisions in both
 
 All Children’s
 
 and
 
 Bay-front.
 
 We hold that in order to satisfy the notice requirement of section 766.316,
 
 *995
 
 Florida Statutes (1997), both participating physicians and hospitals with participating physicians on staff must provide obstetrical patients with notice of then- participation in the plan.
 
 [2]
 

 I. BACKGROUND
 

 The Florida Birth-Related Neurological Injury Compensation Plan (“NICA” or “the plan”) was established by the Florida Legislature in 1988 as a means to alleviate the high costs of medical malpractice insurance for physicians practicing obstetrics. § 766.301, Fla. Stat. (1997). The legislature found that obstetricians were among the most severely affected by the current malpractice problems and that the costs of birth-related neurological injury claims were extremely high.
 
 Id.
 
 Consequently, the legislature created the NICA fund to provide compensation, on a no-fault basis, for birth-related neurological injuries.
 
 Id.
 
 Because NICA remedies are limited, obstetric patients subject to limited compensation under NICA are entitled to receive pre-delivery notice of their rights and limitations under the plan. § 766.316, Fla. Stat. (1997);
 
 Galen,
 
 696 So.2d at 309. Additionally, in order to claim immunity from civil suits under NICA, health care providers must provide pre-delivery notice to those patients.
 
 See Galen,
 
 696 So.2d at 311;
 
 Bd. of Regents v. Athey,
 
 694 So.2d 46, 49-50 (Fla. 1st DCA 1997). In particular, the notice provision provides:
 

 Each hospital with a participating physician on its staff
 
 and
 
 each participating physician, other than residents, assistant residents, and interns deemed to be participating physicians under s. 766.814(4)(c), under the Florida Birth-Related Neurological Injury Compensation Plan
 
 shall
 
 provide notice to the obstetrical patients thereof as to the limited no-fault alternative for birth-related neurological injuries. Such notice shall be provided on forms furnished by the association and shall include a clear and concise explanation of a patient’s rights and limitations under the plan.
 

 § 766.316, Fla. Stat. (1997) (emphasis supplied). A “participating physician” is defined as
 

 a physician licensed in Florida to practice medicine who practices obstetrics or performs obstetrical services either full time or part time and who had paid or was exempted from payment at the time of the injury the assessment required for participation in the birth-related neurological injury compensation plan for the year in which the injury occurred.
 

 § 766.302(7), Fla. Stat. (1997). “ ‘Hospital’ means any hospital licensed in Florida.” § 766.302(6), Fla. Stat. (1997).
 

 In the underlying cases, two infants, Christopher Kocher and Courtney Lynn Glenn, suffered birth-related neurological injuries in unrelated incidents.
 

 The Kocher Case
 

 In Christopher Kocher’s case, the delivering physician had timely provided notice of his participation in the plan, but Bay-front Medical Center (“Bayfront”), the hospital where Christopher was delivered, did not provide any notice.
 
 Bayfront Med. Cntr., Inc. v. Fla. Birth-Related Neurological Injury Comp. Ass’n,
 
 841 So.2d 626, 627 (Fla. 2d DCA 2003),
 
 quashed,
 
 955 So.2d 531 (Fla.2007). Christopher died as a result of his injuries, and Christopher’s parents (the “Koehers”) filed a medical malpractice action against Bayfront.
 
 Id.
 
 
 *996
 
 at 627-28. Bayfront moved to abate the action, claiming that the Kochers must pursue remedies under NICA.
 
 Id.
 
 at 628. The case was submitted to an administrative law judge (“ALJ”), who concluded that (1) the infant’s injuries were compensable under NICA; (2) the physician supplied the required notice but the hospital did not; (3) the failure of the hospital to provide notice precluded the application of the exclusivity and immunity provisions of the plan; and (4) the Kochers could either accept the plan benefits or pursue civil remedies.
 
 Bayfront,
 
 982 So.2d at 705. On appeal, Bayfront argued that the purpose of the notice requirement was satisfied and that, consequently, the Kochers were limited to the remedies available through the plan, and Bayfront was immune from any civil action.
 
 Id.
 
 at 705-07. The Kochers asserted that they were not limited by NICA remedies, due to Bayfront’s failure to fulfill the notice requirement.
 
 Id.
 
 at 707. The Second District agreed with Bayfront.
 
 [3]
 
 Relying on this Court’s decision in
 
 Galen,
 
 the Second District concluded that the notice requirement had been satisfied and that the Kochers did not have the right to reject NICA remedies and pursue a civil action.
 
 Bayfront,
 
 982 So.2d at 709. Specifically, it concluded:
 

 [A] physician’s predelivery notice of his participation in the Plan satisfies the statutory notice requirement as defined by the Florida Supreme Court in
 
 Galen,
 
 696 So.2d 308. Therefore, in the instant case, the statute was satisfied by the notice provided to Mrs. Kocher by her physician. Moreover, we agree that a plain reading of the statute does not require notice from Bayfront. The statute does not mandate that both the hospital and physician must give notice; rather, the statute qualifies which hospitals must give notice. That is, the only hospitals that are statutorily required to give notice are those “with a participating physician on ... staff.” § 766.316. Although the statute does not define this term, a plain reading of this language suggests that a hospital is required to provide such notice to an obstetrical patient if that patient’s delivering physician is a Plan participant
 
 and
 
 is also an employee of the hospital, as opposed to a physician who merely enjoys staff privileges at the hospital. Nothing in the instant ALJ’s amended final order indicates that Bayfront is a hospital with a participating physician on staff or that Mrs. Kocher’s physician is an employee of Bayfront. As such, we conclude that Bayfront was not statutorily required to provide Mrs. Kocher with additional notice.
 

 Id.
 
 at 708-09. The Second District acknowledged that its decision was based on an extension of this Court’s reasoning in
 
 Galen.
 
 Therefore, the Second District certified the question of great public importance at issue here.
 
 Id.
 
 at 709.
 

 The Glenn Case
 

 Like Christopher Kocher, Courtney Glenn was born at Bayfront Medical Center and suffered birth-related neurological injuries.
 
 All Children’s,
 
 863 So.2d at 452. After her delivery, Courtney received immediate resuscitation and other neonatal care administered by nurses provided to Bayfront by All Children's Hospital (“All Children’s”).
 
 Id.
 
 at 452-53. Courtney’s
 
 *997
 
 parents (the “Glenns”) subsequently filed a civil suit against the delivering obstetrician personally, the professional partnership to which he belonged, and Bayfront.
 
 Id.
 
 at 453. The Glenns settled out of court with the obstetrician, his partnership, and Bay-front, and then filed a third amended complaint against All Children’s, claiming that it was negligent in its administration of post-natal care.
 
 Id.
 
 The civil action against All Children’s was abated after the trial court determined that, before the suit could proceed, the Glenns must obtain an administrative determination of whether Courtney had suffered a birth-related neurological injury that was compensable under the plan.
 
 Id.
 
 Following an administrative hearing, an ALJ issued a final written order finding that, while the treating obstetrician gave the mother timely notice of his participation in the plan, Bayfront did not.
 
 Id.
 
 The ALJ further found that Bay-front’s failure to give notice was not due to any medical emergency, which would have excused the failure.
 
 Id.
 
 Consequently, the ALJ concluded that, because Bayfront failed to give the required statutory notice of its participation in the plan, ‘“neither the hospital, the participating physician, nor any other provider (such as All Children’s Hospital) may invoke NICA exclusivity to defeat a civil claim.’ ”
 
 Id.
 
 The Second District reversed, finding that the disposition of the Glenns’ case was controlled by its previous decision in
 
 Bayfront. All Children’s,
 
 989 So.2d at 3.
 
 [4]
 
 Therefore, it concluded that
 

 the notice given by the delivering physician in this case — who was not an employee of the hospital where the infant was delivered — was sufficient to meet the notice requirements of the Act. We therefore conclude that the ALJ erred in holding that Bayfront’s failure to give notice precluded All Children’s from invoking the statutory exclusive remedy provision and being shielded from tort liability.
 

 Id.
 
 As in
 
 Bayfront,
 
 the Second District certified the question of great public importance at issue here.
 

 II. ANALYSIS
 

 We review the district courts’ interpretation of a statute de novo.
 
 Brass & Singer, P.A. v. United Auto. Ins. Co.,
 
 944 So.2d 252, 253 (Fla.2006).
 

 As a general rule, statutory interpretation begins with the plain meaning of the statute.
 
 GTC, Inc. v. Edgar,
 
 967 So.2d 781, 785 (Fla.2007) (citing
 
 Holly v. Auld,
 
 450 So.2d 217, 219 (Fla.1984)). As this Court has explained,
 

 [w]hen the language of the. statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning.
 

 Holly,
 
 450 So.2d at 219 (quoting
 
 A.R. Douglass, Inc. v. McBainey,
 
 102 Fla. 1141, 137 So. 157, 159 (1931)). “If the language of a statute is clear and unambiguous, the legislative intent must be derived from the words used without involving rules of construction or speculating as to what the legislature intended.”
 
 Kephart v. Hadi,
 
 932 So.2d 1086, 1091 (Fla.2006) (quoting
 
 Zuckernian v. Alter,
 
 615 So.2d 661, 663 (Fla.1993)). “[E]ven where a court is convinced that the legislature really meant and intended something not expressed in the phraseology of the [statute], it will not
 
 *998
 
 deem itself authorized to depart from the plain meaning of the language which is free from ambiguity.”
 
 St. Petersburg Bank & Trust Co. v. Hamm,
 
 414 So.2d 1071, 1073 (Fla.1982) (quoting
 
 Van Pelt v. Hilliard,
 
 75 Fla. 792, 78 So. 693, 694 (1918)).
 

 Here, the statute at issue provides in relevant part that
 
 “[e]ach hospital with a participating physician on its staff and each participating physician ... shall provide notice to the obstetrical patients thereof as to the limited no-fault alternative for• birth-related neurological injuries.”
 
 § 766.316, Fla. Stat. (1997) (emphasis supplied). We find this language clear and unambiguous. Affording the statute its plain and ordinary meaning, we find that
 
 both
 
 participating physicians and hospitals with a participating physician on staff are required to provide notice to obstetrical patients of their rights and limitations under the plan. The plain language of section 766.316 does not, in any way, suggest that when a participating physician provides notice of his participation in the plan, the notice requirement has been satisfied.
 

 Our plain reading of the statute here is in harmony with
 
 Galen,
 
 696 So.2d 308. The question presented in
 
 Galen
 
 concerned
 
 when
 
 notice must be given, not
 
 who
 
 must give notice. 696 So.2d at 308-09. We concluded that, logically, the patient must receive notice prior to delivery because the purpose of the notice provision is to inform the obstetrical patient that her remedies may be limited under the plan and to give her an opportunity to make an informed choice of providers.
 
 Id.
 
 at 309. Accordingly, we held that section 766.316 requires that health care providers give patients pre-delivery notice of their participation in NICA as a condition precedent to invoking NICA immunity.
 
 Id.
 
 Notably, the term “health care provider” includes a health care facility.
 
 See
 
 § 440.13(l)(i), Fla. Stat. (1997); § 766.202(4), Fla. Stat. (2009). And “health care facility” includes a hospital.
 
 See
 
 §§ 408.032(7), 440.13(l)(h), Fla. Stat. (1997). Therefore, our conclusion in
 
 Galen
 
 — that health care providers must give patients pre-delivery notice
 
 of
 
 participation in the plan — includes hospitals and does not, in any way, imply that hospitals with participating physicians on staff are excluded from fulfilling the notice requirement for the reason that the participating physician provided notice. Rather,
 
 Galen
 
 supports our holding today that the statute requires
 
 both
 
 participating physicians and hospitals with participating physicians on staff to provide obstetrical patients with notice of their rights and limitations under the plan.
 

 In both of the underlying cases, the ALJ and the Second District interpreted NICA’s notice provision as not severable based on NICA’s exclusivity of remedies rule, which provides that if an injury is found to be compensable under NICA, then all civil remedies are precluded.
 
 [5]
 

 See
 
 § 766.303(2), Fla. Stat. (1997).
 
 *999
 
 In particular, the ALJ ruled in the Kocher ease that if either the hospital or the participating physician fails to give notice, then the notice provision is not fulfilled, and the injured party can either elect to take NICA remedies or seek civil remedies against
 
 either
 
 party.
 
 See Bayfront,
 
 982 So.2d at 707. And the Second District has held that if one party gives notice, then the notice requirement is satisfied and NICA is the only available remedy.
 
 See id.
 
 at 708;
 
 All Children’s,
 
 989 So.2d at 3. We disagree with both the ALJ and the Second District. Instead, we hold that the notice provision is severable with regard to defendant liability. Consequently, under our holding today, if either the participating physician or the hospital with participating physicians on its staff fails to give notice, then the claimant can either (1) accept NICA remedies and forgo any civil suit against any other person or entity involved in the labor or delivery, or (2) pursue a civil suit only against the person or entity who failed to give notice and forgo any remedies under NICA.
 
 [6]
 

 Consistent with the plain meaning and the pimpose of the statute, our holding (i) shields from civil liability those persons or entities that gave proper and timely notice, and (ii) allows a claimant who did not receive proper and timely notice to pursue civil remedies only against the person or entity who failed to provide such notice.
 

 The Second District alternatively concluded that Bayfront was not required to give notice because it did not have any participating physicians on staff.
 
 Bayfront,
 
 982 So.2d at 708-09;
 
 All Children’s,
 
 989 So.2d at 3. Specifically, the Second District ruled that the hospital is required to give notice only if the delivering physician is a plan participant and also an employee of the hospital, as opposed to a participating physician who merely has staff privileges.
 
 Bayfront,
 
 982 So.2d at 708-09;
 
 All Children’s,
 
 989 So.2d at 3. We disagree.
 

 Although NICA does not define the term “staff,” section 395.002(19), Florida Statutes (1997), the chapter relating to hospital regulations and licensing, defines “medical staff’ as “physicians licensed ... with privileges in a licensed facility, as well as other licensed health care practitioners with clinical privileges as approved by a licensed facility’s governing board.” Section 395.002(6) defines “clinical privileges” as “the privileges granted to a physician or other licensed health care practitioner to render patient care services in a hospital.” Accordingly, Bayfront is not excluded from the requirement of giving notice unless Bayfront has no participating physicians with staff privileges.
 

 As to All Children’s, it is undisputed that it was exempt from the notice requirement because All Children’s is a pediatric hospital that does not offer
 
 *1000
 
 obstetrical services; therefore, it did
 
 not
 
 have any participating physicians on staff. Regarding All Children’s potential liability, the ALJ concluded that Bayfront’s failure to give notice was imputed to All Children’s and precluded All Children’s from invoking the statutory exclusive remedy. All
 
 Children’s,
 
 989 So.2d at 3. The Second District concluded that the ALJ erred in holding that Bayfront’s failure to give notice prevented All Children’s from claiming immunity because the physician’s notice satisfied the purpose of the notice provision and NICA was the only available remedy.
 
 Id.
 

 [7]
 

 The Glenns argue that All Children’s does not have NICA immunity because it is an agent of Bayfront and that, consequently, Bayfront’s failure to provide notice is imputed to All Children’s. In the alternative, the Glenns argue that All Children’s is not immune from civil suit because the injuries claimed against All Children’s did not occur during labor, delivery, or immediate post resuscitative efforts. Because the Glenn’s additional arguments for All Children’s lack of immunity have not been addressed at the Second District, we remand for consideration of these issues.
 

 III. CONCLUSION
 

 For the reasons explained above, we answer the certified question in the negative, quash the decisions of the Second District in
 
 Bayfront Medical Center, Inc. v. Florida Birth-Related Neurological Injury Compensation Ass’n,
 
 982 So.2d 704 (Fla. 2d DCA 2008), and
 
 All Children’s Hospital, Inc. v. Department of Administrative Hearings,
 
 989 So.2d 2 (Fla. 2d DCA 2008), and remand for further proceedings.
 

 It is so ordered.
 

 QUINCE, C. J., and PARIENTE, LEWIS, LABARGA, and PERRY, JJ„ concur.
 

 CANADY, J., recused.
 

 [1]
 

 . Wc have jurisdiction.
 
 See
 
 art. V, § 3(b)(4), Fla. Const.
 

 [2]
 

 . The "plan" means the Florida Birth-Related Neurological Injury Compensation Plan established under section 766.303, Florida Statutes (1997).
 
 See
 
 § 766.302(8), Fla. Stat. (1997).
 

 [3]
 

 . The Second District first determined that the ALJ exceeded his authority by deciding issues related to immunity and the notice requirement.
 
 See Bayfront Med. Centr., Inc. v. Div. of Admin. Hearings,
 
 841 So.2d 626 (Fla. 2d DCA 2003). However, this Court quashed the Second District’s decision, concluding that an ALJ does have the authority to make determinations regarding those issues.
 
 See Fla. Birth-Related Neurological Injury Comp. Ass'n v. Fla. Div. of Admin. Hearings,
 
 948 So.2d 705, 707 (Fla.2007).
 

 [4]
 

 . As in
 
 Bayfront,
 
 die Second District initially determined that the AU exceeded his authority by deciding notice and immunity issues.
 
 See All Children’s,
 
 863 So.2d at 455-57. But that decision was also quashed by this Court in
 
 Florida Birth-Related Neurological Injury Compensation Ass’n,
 
 948 So.2d at 717.
 

 [5]
 

 . Specifically, the rule states:
 

 The rights and remedies granted by this plan on account of a birth-related neurological injury shall exclude all other rights and ■remedies of such infant, her or his personal representative, parents, dependents, and next of kin, at common law or otherwise, against any person or entity directly involved with the labor, delivery, or immediate postdelivery resuscitation during which such injury occurs, arising out of or related to a medical malpractice claim with respect to such injury; except that a civil action shall not be foreclosed where there is clear and convincing evidence of bad faith or malicious purpose or willful and wanton disregard of human rights, safety, or property, provided that such suit is filed prior to and in lieu of payment of an award under ss. 766.301-766.316.
 

 
 *999
 
 § 766.303(2), Fla. Stat. (1997).
 

 [6]
 

 . Applying this reasoning, if a participating physician gave the required statutory notice 1o his patient, but the hospital did not, the injured party would be limited to NICA remedies with respect to the doctor. In addition, if the injured party accepted NICA remedies, he or she would be precluded from seeking civil remedies against the hospital because once an injured parly accepts NICA remedies he or she is precluded from seeking any other remedies "against any person or entity directly involved with the labor, delivery, or immediate postdelivery resuscitation during which such injury occurs, arising out of or related to a medical malpractice claim with respect to such injury.” § 766.303(2), Fla. Stat. (1997). The claimant's other choice in this situation would be to forgo any remedy against the participating physician, thereby avoiding the exclusivity provision, and to pursue civil remedies against the hospital and any other person or entity who was required to give notice but failed to do so.
 

 [7]
 

 . As discussed earlier in this opinion, neither the ALJ nor the Second District decided this issue correctly.