# Third District Court of Appeal

## State of Florida

Opinion filed May 27, 2015.

————————

No. 3D14-2122
Lower Tribunal No. 00-17596

————————

## University of Miami d/b/a University of Miami School of Medicine,
Petitioner,

vs.

## Michael A. Ruiz, by and through his Parents and Legal Guardians, and Juanita Ruiz and Miguel Angel Ruiz, individually,
Respondents.

On Petition for Writ of Certiorari to the Circuit Court for Miami-Dade County, Jerald Bagley, Judge.

Fowler White Burnett P.A., and Marc J. Schleier and Christopher E. Knight, for petitioner.

Lincoln J. Connolly, for respondents.

On Motion for Clarification and Certification to the Florida Supreme Court

Before SUAREZ, ROTHENBERG, and LOGUE, J.

ROTHENBERG, J.

We deny the University of Miami's motion for certification to the Florida Supreme Court, but we grant the University of Miami's motion for clarification, withdraw our opinion issued February 11, 2015, and substitute the following in its stead.

The University of Miami, doing business as The University of Miami School of Medicine ("UM"), petitions this Court for certiorari relief from the trial court's order denying its motion for summary judgment on the plaintiffs' claims for medical malpractice based on UM's contention that it is entitled to immunity from suit under Florida's Birth-Related Neurological Injury Act, § 766.301, Fla. Stat., et seq. (1998) ("NICA"). We hold that the trial court departed from the essential requirements of the law by denying summary judgment as to the portion of the plaintiffs' claims alleging direct liability for medical malpractice, but that it did not depart from the essential requirements of the law by denying UM's motion for summary judgment as to the portion of the malpractice claim based on UM's vicarious liability for its employees. We accordingly grant in part and deny in part UM's petition.

### FACTUAL AND PROCEDURAL BACKGROUND

Michael A. Ruiz ("Michael") was born on August 14, 1998, at Jackson North Maternity Center ("Jackson"), a hospital owned by the Public Health Trust of Miami-Dade County ("the PHT"). Two doctors from UM's OB/GYN practice,

2

Dr. Paul Norris and Dr. Bel Barker, provided obstetrical services to Michael's mother, Juanita Ruiz, during the birth. Tragically, Michael suffered a serious brain injury caused by oxygen deprivation during the course of labor and delivery.

Michael's parents, Miguel and Juanita Ruiz, filed a complaint on behalf of Michael and also on their own behalf (collectively, "the plaintiffs") against UM and the PHT for medical malpractice, alleging that Michael's injuries are a result of negligent medical care provided during the labor and delivery. The plaintiffs asserted that UM and the PHT were directly negligent and also pleaded various theories of vicarious liability based on the actions of their employees, Drs. Norris and Barker.[1] The plaintiffs have not asserted any causes of action against the doctors themselves.

After the plaintiffs filed suit, the case was abated to allow an administrative law judge ("ALJ") to determine whether the injury was compensable under NICA. The plaintiffs filed a claim with the Division of Administrative Hearings ("DOAH") to receive compensation from the Florida Birth-Related Neurological Injury Association ("the Association"), which was established to provide no-fault compensation to claimants meeting the statutory requirements of NICA. See § 766.303, Fla. Stat. (1998). The ALJ determined that Michael's injury was compensable under NICA and approved the statute's maximum award of $100,000

---

[1] As is true of many physicians working at Jackson Memorial, the doctors are at least arguably employed both publicly by the PHT and privately by UM.

in addition to attorney's fees and future medical care costs.  See § 766.31, Fla. Stat. (1998).  The ALJ also specifically found that the PHT had provided the plaintiffs with notice that it participated in the NICA plan, as required by section 766.316 of the Florida Statutes (1998) ("NICA's Notice Provision"), but that Drs. Norris and Barker had not complied with the notice requirements.  The ALJ made no finding whether UM itself had given or was required to give notice of NICA participation under the statute.[2]

UM timely appealed the ALJ's finding that its doctors had not given the required notice of NICA participation.  This Court, however, affirmed the ALJ's order.  Univ. of Miami v. Ruiz, 916 So. 2d 865 (Fla. 3d DCA 2005).  That appeal essentially ended the administrative portion of the proceedings and cemented the plaintiffs' ability to receive NICA benefits from the Association.  However, the plaintiffs have neither accepted nor declined the award to this date, opting instead to hold in abeyance their decision whether to accept NICA benefits as their exclusive remedy while pursuing their civil suit against UM.

In April 2011, UM filed a motion for summary final judgment claiming immunity from suit under section 766.303 of NICA ("NICA's Immunity

---

[2] The ALJ has "exclusive jurisdiction to determine whether a claim filed under [NICA] is compensable."  § 766.304, Fla. Stat. (1998).  The ALJ also has jurisdiction to make findings whether a participating physician or hospital has given the statutorily required notice of NICA participation to the patient.  Fla. Birth-Related Neurological Injury Comp. Ass'n v. Fla. Div. of Admin. Hearings, 948 So. 2d 705, 717 (Fla. 2007).

4

Provision"), which mandates compensation from the Association as the exclusive remedy for injuries found to be compensable under NICA. Further, UM argued that because it is not a participating hospital or doctor, it was not required to give notice under section 766.316 and should therefore be immune from suit. The plaintiffs responded by arguing that Drs. Norris and Barker are employed by UM and, because Drs. Norris and Barker failed to give notice, UM is not immune from suit. The trial court denied UM's motion for summary judgment without explanation on August 5, 2014. UM timely filed this petition for writ of certiorari.

## ANALYSIS

This certiorari petition presents a narrow legal issue. We must determine if and when an entity that is neither a hospital nor a physician participating in the NICA plan may invoke NICA's immunity from suit when its employees are participating doctors who have waived their personal NICA immunity by failing to comply with NICA's Notice Provision. We hold that NICA immunity applies to such entities when the allegations of the complaint indicate that they were "directly involved" in the medical care provided during or immediately after labor and delivery, but that NICA immunity does not apply when the allegations are based on such entities' vicarious liability for the medical malpractice of their employees when those employees have failed to comply with NICA's Notice Provision. Because the plaintiffs have alleged both direct liability against UM and vicarious

5

liability based on the actions of Drs. Norris and Barker, we grant UM's petition in part and deny UM's petition in part.[3]

## I. Jurisdictional Standard for Certiorari Relief

Because this issue is before us on UM's petition for certiorari, UM must establish that the trial court's order denying summary judgment departed from the essential requirements of the law in a way that will cause irreparable harm in order to obtain relief. Citizens Prop. Ins. Corp. v. San Perdido Ass'n, 104 So. 3d 344, 351 (Fla. 2012). As a jurisdictional threshold, we must first address whether the trial court's denial of UM's motion for summary judgment based on its asserted immunity under NICA's Immunity Provision, if error, is the type of error that would cause irreparable harm to UM not subject to redress on plenary appeal. Id.

A party typically cannot invoke an appellate court's certiorari jurisdiction based on the denial of a motion to dismiss or a motion for summary judgment because such orders can generally be remedied by a final appeal. See San Perdido, 104 So. 3d at 351-52. However, when the motion for summary judgment hinges on the application of a complete statutory immunity from suit—in contrast to mere

---

[3] We note that the Florida Supreme Court declined to opine on a very similar issue because it had not been fully briefed in Florida Birth-Related Neurological Injury Comp. Ass'n v. Dep't of Admin. Hearings, 29 So. 3d 992, 999-1000 (Fla. 2010). Instead the Florida Supreme Court remanded the matter to the Second District Court of Appeal, id., which, in turn, remanded the matter to the ALJ handling the case for further findings. All Children's Hosp., Inc. v. Dep't of Admin. Hearings, 55 So. 3d 670, 672-73 (Fla. 2d DCA 2011). We appear to be the first Florida appellate court to render an opinion on this particular issue.

immunity from liability—requiring a party entitled to that immunity to continue litigating the suit constitutes irreparable harm in and of itself. See id. at 351-55 (explaining the distinctions between immunity from liability and immunity from suit).

Every court that has addressed this issue has construed NICA's Immunity Provision to grant immunity from suit, not immunity from liability. Pediatrix Med. Grp. of Fla., Inc. v. Falconer, 31 So. 3d 310, 311 (Fla. 4th DCA 2010); Orlando Reg'l Healthcare Sys., Inc. v. Alexander, 932 So. 2d 598, 600 (Fla. 5th DCA 2006). We therefore have certiorari jurisdiction over this case. We also hold that the trial court departed from the essential requirements of the law by denying UM's claim of immunity from suit on the direct liability portion of the plaintiffs' medical malpractice claim, but that it did not err in denying the same to the plaintiffs' claims based on vicarious liability through respondeat superior.

## II.   An Overview of NICA and Controlling Law

In determining whether the trial court departed from the essential requirements of the law by denying UM's claim for NICA immunity, we have carefully examined NICA, the case law interpreting NICA's provisions, and the common law doctrines of vicarious liability and respondeat superior.

### A.  NICA's Immunity Provision

7

NICA was passed and the Association was created "to provide a no-fault alternative remedy for a 'limited class of catastrophic [birth-related neurological] injuries that result in unusually high costs for custodial care and rehabilitation.'" Ruiz, 916 So. 2d at 868 (alteration in original) (quoting § 766.301(2), Fla. Stat. (1998)). In passing NICA, the legislature sought to shelter medical personnel providing obstetrical services from the increasingly high costs of medical malpractice insurance, particularly given the likelihood of suit and the magnitude of potential damages when a baby is delivered with a neurological injury. § 766.301, Fla. Stat. (1998). To effectuate this relief, NICA provides an exclusive set of rights and remedies for claimants with injuries meeting the NICA definition[4] and expressly prohibits claimants from commencing civil medical negligence actions against "**any person or entity directly involved with the labor, delivery, or immediate postdelivery resuscitation during which such injury occurs, arising out of or related to a medical negligence claim with respect to such injury.**" § 766.303(2) (emphasis added).[5] Thus, assuming that an injury is

---

[4] These rights and remedies allow a claimant to file a claim in the DOAH for an ALJ to determine whether the claim is compensable. If the claim is found to be compensable under the requirements and definitions established throughout NICA, the ALJ must award actual expenses for medically necessary and reasonable medical care and related costs for the child's lifetime, § 766.31(1)(a), a payment to the child's parents of up to $100,000 if living or $10,000 if deceased, § 766.31(1)(b), and reasonable expenses incurred in filing the NICA claim, including attorney's fees, § 766.31(1)(c). These remedies are provided regardless of fault by any party.

[5] Section 766.303(2) provides an exception from this immunity "where there is

8

compensable under NICA, the sine qua non for a defendant to invoke NICA's Immunity Provision is **direct involvement** in the labor and delivery.[6]  Every person or entity directly involved in the labor and delivery is presumed immune from civil suit for medical negligence.

## B. *NICA's Notice Provision*

NICA's Notice Provision requires participating physicians and hospitals with participating physicians to give patients notice that the doctors and/or hospitals participate in the NICA plan so the patients are aware they may be waiving their right to civil suit in the event of a birth-related neurological injury. NICA's Notice Provision provides in full:

> **766.316. Notice to obstetrical patients of participation in the plan**
> Each hospital with a participating physician on its staff and each participating physician, other than residents, assistant residents, and interns deemed to be participating physicians under s. 766.314(4)(c), under the Florida Birth-Related Neurological Injury Compensation Plan shall provide notice to the obstetrical patients as to the limited no-fault alternative for birth-related neurological injuries. Such notice shall be provided on forms furnished by the association and shall include a clear and concise explanation of a patient's rights and limitations under the plan. The hospital or the participating physician may elect to have the patient sign a form acknowledging receipt of the notice form. Signature of the patient acknowledging receipt of the notice form raises a rebuttable

---

clear and convincing evidence of bad faith or malicious purpose or willful and wanton disregard of human rights, safety, or property," but no such allegations are involved in the present dispute.

[6] The statute grants immunity to anyone "directly involved with the labor, delivery, or immediate postdelivery resuscitation during which such injury occurs," but we will refer to this as "labor and delivery" for ease of reference.

presumption that the notice requirements of this section have been met. Notice need not be given to a patient when the patient has an emergency medical condition as defined in s. 395.002(8)(b) or when notice is not practicable.

§ 766.316.

Although NICA's Notice Provision makes no reference to NICA's Immunity Provision or discusses waiver of immunity in the statute itself, it is now well-established Florida law that a party who is required to give notice under NICA's Notice Provision and fails to do so waives its right to assert the exclusivity of remedies defense provided in NICA's Immunity Provision. Galen of Fla., Inc. v. Braniff, 696 So. 2d 308, 309-10 (Fla. 1997). Further, due to the inclusion of the conjunctive word "and" in section 766.316, the Florida Supreme Court has interpreted NICA's Notice Provision to require independent notice from both participating physicians and participating hospitals—notice by one does not satisfy the notice requirement for the other. Fla. Birth-Related Neurological Injury Comp. Ass'n v. Dep't of Admin. Hearings, 29 So. 3d 992, 998 (Fla. 2010) ("NICA v. DOAH").

The Florida Supreme Court also held in NICA v. DOAH that the waiver of immunity for failure to comply with NICA's Notice Provision is severable as to each entity required to give notice:

> [W]e hold that [NICA's] notice provision is severable with regard to defendant liability. Consequently, under our holding today, if either the participating physician or the hospital with participating

10

physicians on its staff fails to give notice, then the claimant can either (1) accept NICA remedies and forgo any civil suit against any other person or entity involved in the labor or delivery, or (2) pursue a civil suit only against the person or entity who failed to give notice and forgo any remedies under NICA.

Id. at 999 (footnote omitted).

Thus, when there is compliance with NICA's Notice Provision by some but not all of the NICA participants, the claimant is faced with the choice of accepting the NICA benefits to the exclusion of any and all civil remedies he or she may have against any entities directly involved in the delivery, or the claimant can eschew the NICA benefits and take his or her chances in a civil suit against the party or parties who have waived NICA immunity by failing to comply with the NICA Notice Provision.

Because there appeared to be some confusion at oral argument regarding the entitlement to immunity and the waiver of immunity due to the interplay of NICA's Immunity Provision and NICA's Notice Provision, we take this opportunity to clarify the issue. Giving a patient notice of NICA participation does not entitle a party to immunity; rather, a party's **direct involvement in the labor and delivery** of a child who suffers a NICA-compensable injury entitles that party to invoke NICA's Immunity Provision. § 766.303(2). The **only** effect NICA's Notice provision has on a party's immunity is that a party's failure to give notice when it is required to do so under NICA's Notice Provision will constitute a

11

waiver of the NICA immunity to which it would otherwise be entitled by virtue of the party's direct involvement in the labor and delivery. Because only hospitals with participating physicians and participating physicians themselves are required to give such notice, § 766.316, only those two categories of people could ever waive NICA immunity when they are directly involved in the labor and delivery. Every other person or entity directly involved in the labor and delivery is entitled to immunity that cannot be waived regardless of any notice that is or is not provided.

### C. The Doctrines of Vicarious Liability and Respondeat Superior

The common law doctrine of respondeat superior provides that an employer may be held liable for the actions of its employee if the employee was acting within the scope of his employment when he committed the tortious act. Mercury Motors Exp., Inc. v. Smith, 393 So. 2d 545, 549 (Fla. 1981). The historical underpinnings of the doctrine of respondeat superior are to hold the master responsible for the acts of his servant because the master alone is able to direct the servant:

> The basis for the common-law liability of the master or principal for the conduct of the servant or agent is stated in the Latin maxim, "qui facit per alium, facit per se"—"he who acts through another, acts through himself." This liability of the master or principal is sometimes referred to as transferred, vicarious, derivative or imputed liability. Where the relationship of master-servant or principal-agent exists, the doctrine is referred to as "respondeat superior."

1 Modern Tort Law: Liability and Litigation § 7:2 (2d ed.) (footnotes omitted).

The doctrine of respondeat superior is well recognized in Florida law, and our Supreme Court has held:

> An employer is vicariously liable for compensatory damages resulting from the negligent acts of employees committed within the scope of their employment even if the employer is without fault. This is based upon the long-recognized public policy that victims injured by the negligence of employees acting within the scope of their employment should be compensated even though it means placing vicarious liability on an innocent employer.

Mercury Motors, 393 So. 2d at 549. In such cases, the employer essentially stands in the shoes of the negligent employee for whom it is responsible. See Am. Home Assurance Co. v. Nat'l R.R. Passenger Corp., 908 So. 2d 459, 467-68 (Fla. 2005) ("The vicariously liable party is liable only for the amount of liability apportioned to the tortfeasor."); Williams v. Hines, 86 So. 695, 697-98 (Fla. 1920) ("[T]he employer is liable [for the negligent acts of an employee], not as if the act was done by himself, but because of the doctrine of respondeat superior—the rule of law which holds the master responsible for the negligent act of his servant, committed while and servant is acting within the general scope of his employment and engaged in his master's business."); see also Buford v. Williams, 88 So. 3d 540, 548 (La. Ct. App. 2012) ("An employer's liability in respondeat superior shares the nature of the employee's act for which the employer is liable, because for vicarious liability, the employer is standing in the shoes of the employee.").

13

As well-established common law doctrines, vicarious liability and respondeat superior apply to negligence claims for medical malpractice, even those stemming from NICA-compensable injuries, unless NICA "unequivocally states that it changes the common law, or is so repugnant to the common law that the two cannot coexist." Thornber v. City of Ft. Walton Beach, 568 So. 2d 914, 918 (Fla. 1990). There is no such provision in NICA, nor has any case interpreting NICA determined that vicarious liability should not apply.

Thus, assuming that any negligent acts occurred within the scope of the employment, an employer will be held liable for the negligence of its employees to the extent those claims rely on vicarious liability through the doctrine of respondeat superior.

### III. UM is immune for any direct involvement it had in the medical malpractice, but is subject to vicarious liability for its doctors

With these legal principles in mind, we turn now to the facts of the case before us. In the DOAH administrative proceedings, the ALJ found that the PHT had complied with NICA's Notice Provision but that the individual doctors, Drs. Norris and Barker, had not.[7] This Court affirmed those findings. Ruiz, 916 So. 2d at 870. The doctors have thus indisputably waived their ability to claim NICA immunity by failing to comply with NICA's Notice Provision.

---

[7] The PHT was removed from the litigation long ago, and its liability is not at issue in this case.

14

The plaintiffs have filed suit against the doctors' employer, UM, for medical negligence. In their complaint, the plaintiffs allege medical negligence against UM in a single count, in which they plead both that UM has **direct liability** for its own seemingly direct acts or omissions giving rise to Michael's injuries and also that UM is **vicariously liable** for the acts or omissions of its agents or employees, Drs. Norris and Barker, who were allegedly acting within the scope of their duties as UM employees when the negligence occurred. Although these claims were unartfully pled and should have been separated into two causes of action,[8] we address each claim separately because the analysis is distinct as to each theory of liability.

### A. UM is immune for any direct acts of negligence

To the extent the plaintiffs have pled direct liability against UM for actions related to Michael's birth, UM is entitled to immunity. As explained above, NICA's Immunity Provision applies to any person or entity directly involved in the labor and delivery. § 766.303(2). The plaintiffs' direct negligence claims against UM allege that UM is directly responsible for actions related to the birth and delivery of Michael. Because the plaintiffs have alleged that UM is "directly involved" in the labor and delivery, and UM is clearly entitled to immunity under

---

[8] At oral argument, counsel for the plaintiffs admitted that the complaint was not pled as precisely as it could have been, but he stated that the plaintiffs had always intended to prove their claims primarily through vicarious liability.

15

the terms of NICA's Immunity Provision under the plaintiffs' "directly involved" theory, the trial court departed from the essential requirements of the law by denying UM immunity from suit for any alleged direct liability.

As previously stated, the only way a party who is otherwise entitled to NICA Immunity can waive its immunity is by failing to comply with NICA's Notice Provision when it is required to do so. Braniff, 696 So. 2d at 309-10. UM is neither a "hospital with a participating physician on its staff" nor a "participating physician," and it is therefore not required to give notice of NICA participation under the terms of NICA's Notice Provision. See § 766.316 ("Each hospital with a participating physician on its staff and each participating physician, . . . shall provide notice . . . ."). Because there is no NICA notice requirement for UM, it cannot have waived any immunity to which it would otherwise be entitled by failing to give notice. Thus, the plaintiffs cannot proceed on their theory of direct liability against UM, and the trial court departed from the essential requirements of the law by failing to grant summary judgment as to that portion of the plaintiffs' claim against UM.

### B. UM is not immune for the vicarious liability of its doctors

The plaintiffs have also pled that UM is vicariously liable for the medical negligence of its employees, Drs. Norris and Barker, under the theory of respondeat superior. Under this theory of vicarious liability, UM is not being sued

16

for its own direct negligence related to the labor and delivery, but rather by mere virtue of being the employer of the allegedly negligent Drs. Norris and Barker. These claims essentially state that Drs. Norris and Barker were negligent during their direct involvement in the labor and delivery and that UM, although it has **no** direct involvement in the labor and delivery, can be held responsible for its doctors' actions due to its legal status as their employer. See Mercury Motors, 393 So. 2d at 549. Accordingly, this portion of the plaintiffs' claim specifically relies on the notion that UM is **not directly involved** in the labor and delivery. As explained above, NICA's Immunity Provision applies only to those "person[s] or entit[ies] directly involved" with the labor and delivery of the child with a NICA-compensable injury. See § 766.303. Thus, because the plaintiffs' vicarious liability claim is not premised on UM's "direct involvement" in the labor and delivery giving rise to the injury, UM is unable to invoke NICA's Immunity Provision. The fact that UM has no obligation to provide notice of NICA participation, § 766.316, and therefore could not possibly waive any immunity to which it was entitled, is irrelevant because UM cannot invoke NICA immunity for its **indirect** involvement in the labor and delivery in the first place.

We therefore hold that UM cannot claim NICA immunity from vicarious liability based on the alleged negligence of its doctors who waived their right to invoke NICA's Immunity Provision by failing to provide the statutorily-required

notice of NICA participation.[9]  Thus, the trial court did not depart from the essential requirements of the law by failing to grant UM's motion for summary judgment on the plaintiffs' theory of vicarious liability.  Of course, if the plaintiffs elect to proceed with their civil suit against UM rather than accept their benefits under NICA, they must still prove that Dr. Norris and/or Dr. Barker were negligent, that they were employed by UM at the time of their negligence, and that they were acting within the scope of their employment with UM when the negligence occurred.  Mercury Motors, 393 So. 2d at 549.

Petition granted in part; denied in part.[10]

---

[9] We do not reach the issue of whether UM, as an employer, could be held liable if Drs. Norris and Barker **had in fact** provided the required NICA notice and therefore not waived their immunity from suit.  Although an employer's vicarious liability typically rises and falls on the liability of its agent or employee, Bankers Multiple Line Ins. Co. v. Farish, 464 So. 2d 530, 532 (Fla. 1985) (holding that "when a principal's liability rests solely on the doctrine of respondeat superior, a principal cannot be held liable if the agent is exonerated"), there appears to be an exception to this rule where an agent or employee cannot be held liable due to an immunity from suit specific to that employee, see May v. Palm Beach Chem. Co., 77 So. 2d 468, 472 (Fla. 1955) ("'[I]f an agent has an immunity from liability as distinguished from a privilege of acting, the principal does not share the immunity.'" (quoting Restatement (First) of Agency § 217 (1933))).  The statutory immunity of an agent may potentially be invoked by a principal, however, if the rationale underlying the agent's personal immunity also applies to the principal. Hook v. Trevino, 839 N.W.2d 434, 441 (Iowa 2013).  We are skeptical whether the rationale in support of holding a principal liable when its agent is personally immune is sound in cases of NICA immunity, and the issue of whether a vicariously liable principal can invoke a negligent agent's personal immunity defense is a very complicated question on which jurisdictions across the county are divided.  It is, however, a question we need not answer based on the facts of this case.

[10] We note that the plaintiffs have neither accepted nor rejected the ALJ's NICA

compensation award of the statutory maximum $100,000 payment plus medical and legal expenses. Although no court has conclusively determined when a claimant must elect whether to accept NICA's benefits or to proceed with litigation, and NICA itself does not provide a clear cutoff date, every court that has discussed the matter has assumed and implied that a claimant/plaintiff must forgo a NICA award to which it is entitled prior to filing civil suit. See NICA v. DOAH, 29 So. 3d at 999 (holding that a plaintiff must forgo any remedies under NICA in order to "pursue a civil suit"); Anderson v. Helen Ellis Mem'l Hosp. Found., Inc., 66 So. 3d 1095, 1100-01 (Fla. 2d DCA 2011) (stating that plaintiffs must reject NICA benefits if they wish to continue pursuing their civil claim for medical negligence).

These rulings appear to be premised on the belief that allowing a NICA award to remain in limbo until a plaintiff is able to ultimately determine whether a civil suit will yield a higher award would defeat the legislative purpose of the statute. These cases hold that when an ALJ determines that a claimant's injuries are compensable under NICA and approves an award, the claimant must elect prior to filing suit whether to accept the ALJ's award and forego any rights to a civil suit against those directly involved in the labor and delivery, or expressly waive any rights to the NICA award and proceed with his civil suit against any defendants not subject to immunity. Although this issue was discussed at oral argument, it was not raised or argued in the parties' briefs. We therefore also decline to resolve this issue until a time if and when it has been fully developed and is properly before us.