DAUKSCH, Judge.
This is an appeal from an order of dismissal from the Division of Administrative Hearings.
The order of hearing officer William J. Kendrick is as follows:
“This cause came on for consideration of the motions to dismiss filed by respondent, Florida Birth-Related Neurological Injury Compensation Association (NICA) and the responses to the show cause orders issued April 20, 1994.

“STATEMENT OF THE CASE

“1. On March 24,1994, three petitions for ‘Benefits Pursuant to Florida Statute 766.301, et seq.’ were filed with the Division of Administrative Hearings (DOAH) on behalf of Shavon Scalese (Shavon), a minor, who it was alleged had suffered a birth-related neurological injury compensable under the Florida Birth-Related Neurological Injury Compensation Plan (the ‘Plan’).
“2. The first petition, docketed as DOAH Case No. 94-1624N, was brought by John Anthony White, M.D., P.A., and, pertinent to this case, averred:
“The Petitioner, JOHN ANTHONY WHITE, M.D., P.A., for the benefit of SHAVON SCALESE, petitions for benefits pursuant to Florida Statutes, Section 766.301, et seq.

“LEGAL REPRESENTATIVES OF THE CLAIMANT:

“1. This petition is brought for the benefit of SHAVON SCALESE, by JOHN ANTHONY WHITE, M.D., P.A., of 533 North Clyde Morris Blvd., Daytona Beach, Florida 32114, a professional association employing a participating physician (IR *1294 WIN E. LANDAU, M.D.) pursuant to Florida Statutes, Section 766.301 et seq.

“NAME OF INJURED INFANT:

“2. The injured infant’s name is SHA-VON SCALESE.

“NAME AND ADDRESS OF PHYSICIAN:

“3. IRWIN E. LANDAU, M.D., P.A., of 533 North Clyde Morris Blvd., Daytona Beach, Florida 32114.

“DESCRIPTION OF DISABILITY:

“4. It is alleged that SHAVON SCALESE suffered brain damage as a result of birth-related neurological injury.

“TIME AND PLACE OF INJURY:

“5. Halifax Medical Center, 303 North Clyde Morris Blvd., Daytona Beach, Florida 32114, DOB July 21, 1992.
[[Image here]]
“WHEREFORE, the Petitioner respectfully requests that KELLY SCALESE and JOHN SCALESE, mother and father, be granted the benefits available to them and their minor child, SHAVON SCALESE, under the Florida Statutes governing birth-related neurological injuries.
“3. The second petition, docketed as DOAH Case No. 94-1625N, was, in all material respects, identical to the first petition except that the petitioner was described as ‘Halifax Medical Center, for the benefit of SHAVON SCALESE, a minor.’
“4. As with the second petition, the third petition, docketed as DOAH Case No. 94-1626N, was, in all material respects, identical to the first petition except that the petitioner was now described as ‘Irwin E. Landau, M.D., for the benefit of Shavon Scalese.’
“5. On April 19,1994, NICA responded to the foregoing petitions by motion to dismiss. The predicate for such motion was NICA’s contention that:
“... the instant claim ... fails to meet the criteria set forth at Section 766.302(3), Florida Statutes (1993) based on the fact that:
“That a claim may be filed only by a legal representative on behalf of an injured infant. [Petitioners are] not the legal representative of Shavon Scalese.
“6. By order to show cause entered April 20, 1994, each petitioner was advised:
“Given the provisions of Section 766.302(3), Florida Statutes, which describes who may file a claim for compensation under the Florida Birth-Related Neurological Injury Compensation Plan on behalf of an infant, and the petition for benefits filed herein failing to reflect any such nexus, it is
“ORDERED that the petitioner advise the Hearing Officer in writing on or before April 29, 1994, on which petitioner purports to be authorized to file the subject claim.
“7. On April 26, 1994, NICA filed a motion to consolidate DOAH Case Nos. 94-1624N, 94-1625N and 94-1626N, and again moved to dismiss the petitions. The predicate for its motion to dismiss was an amplification of its prior rationale, and was premised as follows:
“2. That the subject petitions for benefits have not been filed by the next of kin, the legal guardians, or the legal representatives of Shavon Scalese as is permitted by Section 766.302(3), Fla.Stat. (1993). There is no averment within the body of any of the subject petitions for benefits which suggest that said petitions were filed by and on behalf of Shavon Scalese by a person authorized by law to represent her legal interest.
“3. It is axiomatic that before a representative can proceed in the name of another that such representative must first be authorized by law to act on one’s behalf. *1295 The petitions for benefits suggest no such authority and instead assert the interest of persons who are not entitled to compensation under the Plan. The respondent believes that an allegation of authority to represent is fundamental to the facial adequacy of a petition and such allegation is mandated by Section 766.305(l)(a), Fla. Stat. (1993).
“8. Petitioners filed a response to the order to show cause on April 28, 1994, and a response to NICA’s motion to consolidate and dismiss on May 11,1994. In response to the motion to consolidate, petitioners offered no objection and by order of May 16, 1994, the three cases were consolidated for all further proceedings.
“9. In their responses to the order to show cause and motion to dismiss, petitioners contended that Doctors Landau and White as participating physicians and Halifax Medical Center as a participating hospital have standing to file a claim for benefits pursuant to Section 766.301, et seq., Florida Statutes. Such responses did not assert, as the petitions did not assert, that any of the petitioners was a legal representative of the injured infant.

“CONCLUSIONS OF LAW

“The essential elements of the Plan

“10. The Florida Birth-Related Neurological Injury Compensation Plan (the “Plan”) was established by the Legislature ‘to provide compensation, on a no-fault basis, for a limited class of catastrophic injuries that result in unusually high costs for custodial care and rehabilitation.’ Section 766.301(2), Florida Statutes. The Plan applies only to ‘birth-related neurological injuries,’ as defined by the Plan, relating to births occurring on or after January 1, 1989. Sections 766.301(2) and 766.303(1), Florida Statutes.
“11. A ‘birth-related neurological injury’ is defined by Section 766.302(2), Florida Statutes, to mean:
“... injury to the brain or spinal cord of a live infant weighing at least 2,500 grams at birth caused by oxygen deprivation or mechanical injury occurring in the course of labor, delivery, or resuscitation in the immediate post-delivery period in a hospital, which renders the infant permanently and substantially mentally and physically impaired. This definition shall apply to live births only and shall not include disability or death caused by genetic or congenital abnormality.
“If the infant’s injury satisfies the statutory definition, then the infant qualifies for financial benefits irrespective of any fault on the part of the health care provider. Such benefits include, with certain exceptions relating to expenses recoverable from certain third parties, the following:
“(a) Actual expenses for medically necessary and reasonable medical and hospital, habilitative and training, residential, and custodial care and service, for medically necessary drugs, special equipment, and facilities, and for related travel
[[Image here]]
“(b) Periodic payments of an award to the parents or legal guardians of the infant found to have sustained a birth-related neurological injury, which award shall not exceed $100,000. However, at the discretion of the hearing officer, such award may be made in a lump sum.
“(c) Reasonable expenses incurred in connection with the filing of a claim ... including reasonable attorney’s fees....
“12. The financial benefits available under the Plan are exclusive of all other rights and remedies. In this regard, Section 766.303, Florida Statutes, provides:
“(2) The rights and remedies granted by this plan on account of a birth-related neurological injury shall exclude all other rights and remedies of such infants, his personal representative, parents, dependents, and next of kin, at common law or otherwise, against any person or entity directly involved with the labor, delivery, or immediate post-delivery resuscitation during which such injury occurs, arising *1296 out of or related to a medical malpractice claim with respect to such injury; except that a civil action shall not be foreclosed where there is clear and convincing evidence of bad faith or malicious purpose or willful and wanton disregard of human rights, safety, or property, provided that such suit is filed prior to and in lieu of payment of an award under ss. 766.301-766.316. Such suit shall be filed before the award of the division becomes conclusive and binding as provided for in s. 766.311.
“13. To provide for more public awareness of the Plan, and a patient’s rights and limitations under the Plan, Section 766.316, Florida Statutes, provides:
“Each hospital with a participating physician on its staff and each participating physician, other than residents, assistant residents, and interns deemed to be participating physicians under s. 766.314(4)(c), under the Florida Birth-Related Neurological Injury Compensation Plan shall provide notice to the obstetrical patients thereof as to the limited no-fault alternative for birth-related neurological injuries. Such notice shall be provided on forms furnished by the association and shall include a clear and concise explanation of a patient’s rights and limitations under the plan.

“Filing a claim under the Plan

“14. Under the Plan, a claim for compensation for a birth-related neurological injury is initiated by the filing of a petition for compensation with the Division of Administrative Hearings (DOAH).
“15. Section 766.305(1), Florida Statutes, establishes the minimum information which must be included in such a petition. Pertinent to this ease, that section provides:
“All claims filed for compensation under the plan shall commence by the claimant filing with the division a petition seeking compensation. Such petition shall include the following information:
“(a) The name and address of the legal representative and the basis for his representation of the injured infant.
“16. ‘Claimant’ is defined by Section 766.302(3), Florida Statutes, to mean:
“... any person who files a claim pursuant to s. 766.305 for compensation for a birth-related neurological injury to an infant. Such a claim may be filed by any legal representative on behalf of an injured infant; and, in the case of a deceased infant, the claim may be filed by an administrator, personal representative, or other legal representative thereof.
“17. Here, the petitioners who have filed the claim for compensation on behalf of the injured infant do not purport to be the infant’s ‘legal representative.’ Rather, they are Halifax Medical Center, the hospital at which the infant was born, Irwin E. Landau, M.D., the participating physician who provided obstetric services at birth, and John Anthony White, M.D., P.A., a professional association that employed Dr. Landau. Under such circumstances, petitioners have no authority or standing to maintain the subject claims for compensation and, indeed, the maintenance of such a claim by these health care providers on behalf of the injured infant evidences a fundamental conflict of interest.[1]
“18. While such health care providers would certainly enjoy a benefit under the *1297 Plan, through relief of any liability should the injury suffered be a ‘birth-related neurological injury,’ the Plan does not accord such health care providers any right or opportunity to initiate a claim before DOAH. See Sections 766.302(3) and 766.305(l)(a), Florida Statutes.
“19. Notwithstanding, the Plan does provide a compelling reason for the infant’s legal representative to file a claim when the infant’s injury is a ‘birth-related neurological injury’ or the legal representative suffers some uncertainty as to the nature of the injury, and a reciprocal benefit to the health care providers should he fail to do so.
“20. Under the Plan, the Legislature has reposed jurisdiction in DOAH to award benefits for a ‘birth-related neurological injury,’ and such benefits are not recoverable outside that forum. See, Section 766.303(2), Florida Statutes, and Hill Top Developers v. Holiday Pines Service Corp., 478 So.2d 368 (Fla.2d DCA 1986). Accordingly, should an infant’s legal representative elect to proceed with a medical malpractice claim, as opposed to seeking the benefits under the Plan, that party faces the risk that a defense will be raised in the malpractice action regarding the exclusivity of the remedies afforded by the Plan and, if sustained, be barred from recovery. That election is, however, the exclusive province of the infant’s legal representative, and there is no provision or mechanism in the Plan that compels the filing of a claim for compensation or permits the initiation of a claim by a health care provider.

“CONCLUSION

“Based on the foregoing, it is
“ORDERED that the petitions for compensation filed in DOAH Case Nos. 94-1624N, 94-1625N and 94-1626N are hereby dismissed.”
We adopt the order and affirm it.
COBB, J., concurs.
GOSHORN, J., concurs in result only.

. "In their response to the motion to dismiss, petitioners asserted, at paragraph 7, that:
"7. Section 766.302, Fla.Stat. (1993), provides that ‘a claim may be filed by any legal representative on behalf of an injured infant; ...' By its own wording Section 766.302, Fla.Stat. (1993), does not state that the claim ‘shall’ or ‘can only he' brought by a parent, legal guardian, or other legal representative thereof. Instead, the statute provides that the claim 'may' be brought by a parent, legal guardian, or other legal representative. The statute in its present form is not so self limiting as to exclude the Petitioners in this case.
"Petitioners’ argument is quite unpersuasive for a number of reasons. First, the Legislature’s use of the word 'may,’ as opposed to the word ‘shall,’ in the referenced provisions is demonstrative of the Legislature's intent that the filing of a claim on behalf of an injured infant was permissive rather than mandatory. Second, reading the provisions of Sections 766.302(3) and 766.305(l)(a), Florida Statutes, together demonstrates clearly that only the infant’s legal repre *1297 sentative may pursue the claim. Hooper v. State Road Department, 105 So.2d 515, 516 (Fla.2d DCA 1958), ('[I]t is a cardinal rule of statutory construction that the plain meaning of a statute will not be disturbed in the absence of ambiguity or conflict.'). Finally, were an ambiguity or conflict to exist with the statute, which it does not, it is a general principle of statutory construction that the mention of one thing implies the exclusion of another. Devin v. City of Hollywood, 351 So.2d 1022 (Fla. 4th DCA 1976). Hence, where, as here, a statute enumerates who may file a claim, it would ordinarily be construed as excluding from its operation all those not expressly mentioned.