WALLACE, Judge.
 

 Allison Anderson and Timothy Anderson seek review by certiorari of the circuit court’s nonfinal order denying their motion to lift the abatement of their civil action against Helen Ellis Memorial Hospital Foundation, Inc. (the Hospital), pending a determination of the available benefits under the Florida Birth-Related Neurological Injury Compensation Plan (the Plan).
 
 [1]
 
 Because the circuit court’s order improperly deprives the Andersons of their right to elect and to pursue their civil remedy, we grant the petition and quash the circuit court’s order.
 

 I. THE FACTUAL AND PROCEDURAL BACKGROUND
 

 The Andersons filed a civil action against the Hospital; Christine Hilder-brandt, R.N. (Nurse Hilderbrandt); and others after their child, Samuel Anderson, suffered severe, birth-related, neurological injuries. The circuit court abated the civil action by stipulated order, pending an administrative determination of whether the Andersons had a compensable claim under the Plan.
 

 The administrative law judge (the ALJ) bifurcated the administrative proceeding, first addressing whether the Andersons’ claim was compensable and whether the Hospital and other participating physicians had complied with the notice provisions of the Plan. Thus the ALJ left the determination of the amount of an award, if any, for a separate proceeding. The ALJ found that the Andersons’ claim was compensa-ble under the Plan but that the Hospital failed to provide the requisite notice under the Plan and that Nurse Hilderbrandt was not a “participating physician” under the Plan. In an appeal from the ALJ’s final order, this court issued an opinion affirming the ALJ’s determination that the Hospital had not given the requisite notice under the Plan and reversing the ALJ’s determination that Nurse Hilderbrandt was not a participating physician under the Plan.
 
 Tarpon Spnngs Hosp. Found., Inc. v. Anderson,
 
 34 So.3d 742 (Fla. 2d DCA 2010).
 

 On remand, the Andersons filed in the administrative proceeding their notice of
 
 *1097
 
 rejection of any benefits under the Plan. Then, on September 9, 2010, the Andersons filed a motion to lift abatement in the circuit court so that they could proceed with their civil action against the Hospital. Nurse Hilderbrandt also sought to enforce in the circuit court the tort immunity available to her under the Plan.
 

 The Hospital opposed the motion to lift abatement, urging the circuit court to continue the abatement until the ALJ determined the amount of compensation available to the Andersons. According to the Hospital, the determination of the amount of available compensation was necessary so that the Andersons could make an informed choice about whether they should reject the benefits available under the Plan and proceed with their civil action. The Hospital argued that the circuit court had the ultimate responsibility of determining what was in the child’s best interests and that there could “be no resolution of this matter in Circuit Court without court approval.” The Hospital argued further that a determination about the child’s best interests “cannot be made without determining the amount of compensation [the Plan] will provide pursuant to Fla. Stat. § 766.31 [ (2004) ] (‘a bird in the hand’) versus pursuing a civil suit against [the Hospital] in Circuit Court with all its contingencies and uncertainty.”
 

 Following a hearing, the circuit court entered an order denying the Andersons’ motion to lift abatement. The order does not explain the circuit court’s rationale for denying the motion. Instead, the order simply states that the circuit court, having taken “the matter under advisement” and “having now thoroughly acquainted itself with the facts and legal issues involved and being otherwise advised in the premises, it is thereupon [ordered and adjudged] that the Plaintiffs’ Motion to Lift Abatement is hereby [denied].” The circuit court entered a separate order granting Nurse Hil-derbrandt’s motion to enforce tort immunity-
 

 On January 21, 2011, the ALJ entered an amendment to the final order on remand from this court’s opinion in the prior appeal. The amendment recognized that the Andersons’ claim was compensable under the Plan, that Nurse Hilderbrandt was a participating physician under the Plan, and that the Hospital had failed to comply with the notice provisions of the Plan. The amendment concluded by stating that the Andersons “having heretofore filed a Notice of Rejection of NICA Benefits, no further proceedings before the Division of Administrative Hearings are necessary, and the file of the Division of Administrative Hearings is hereby closed.”
 

 The Hospital filed a motion for reconsideration of the amendment to the final order, pointing out that the circuit court had agreed that lifting the abatement of the civil action was premature pending a determination of the available compensation under the Plan. On February 23, 2011, the ALJ entered an order denying the Hospital’s motion for reconsideration. In its order, the ALJ stated that the Hospital lacked standing to request a proceeding to determine the Andersons’ available benefits under the Plan “because all issues of compensability are to be resolved as between [the Andersons] and NICA, and [the Andersons] have already formally rejected NICA benefits.” The ALJ noted that none of the parties had taken an appeal from the amended final order and denied the Hospital’s motion with prejudice.
 

 II. THE STANDARD OF REVIEW
 

 In this proceeding, the Andersons seek certiorari review of the circuit court’s order denying their motion to lift abatement. We note the applicable standard of review:
 

 Before a district court can grant relief from an erroneous interlocutory order, a
 
 *1098
 
 petitioner must establish three elements: “(1) a departure from the essential requirements of the law, (2) resulting in material injury for the remainder of the trial (3) that cannot be corrected on postjudgment appeal.”
 
 Fassy [v. Crowley],
 
 884 So.2d [359,] 363 [(Fla. 2d DCA 2004)] (quoting
 
 Parkway Bank v. Fort Myers Armature Works, Inc.,
 
 658 So.2d 646, 648 (Fla. 2d DCA 1995)). The last two elements are jurisdictional and must be analyzed before the court may even consider the first element.
 
 Id.
 

 Lakeland Reg’l Med. Ctr., Inc. v. Allen,
 
 944 So.2d 541, 543 (Fla. 2d DCA 2006).
 

 III. ABATEMENT AS IRREPARABLE HARM
 

 If the circuit court departed from the essential requirements of the law in denying the Andersons’ motion to lift abatement, then its order results in irreparable harm entitling them to certiorari review. “An order of abatement is properly reviewable by writ of certiorari, because there is no adequate remedy for the delay caused by abatement after final judgment.”
 
 Britamco Underwriters, Inc. v. Cent. Jersey Invs., Inc.,
 
 632 So.2d 138, 139 (Fla. 4th DCA 1994);
 
 see also Relinger v. Fox,
 
 55 So.3d 638, 639-40 (Fla. 2d DCA 2011) (citing
 
 Britamco
 
 for the foregoing proposition);
 
 Rowell v. H.G. Smith,
 
 342 So.2d 149, 149 (Fla. 1st DCA 1977) (noting same). “A trial court has broad discretion to grant a motion for stay, but certiorari is available as a remedy if the delay in proceedings constitutes a departure from the essential requirements of [the] law causing material injury that cannot be remedied on direct appeal.”
 
 Shoemaker v. State Farm Mut. Auto. Ins. Co.,
 
 890 So.2d 1195, 1197 (Fla. 5th DCA 2005). Accordingly, we turn to the merits of the Andersons’ petition.
 

 IV. DEPARTURE FROM THE ESSENTIAL REQUIREMENTS OF THE LAW
 

 The Andersons argue that the circuit court’s order departs from the essential requirements of the law in three ways. First, the order deprives them of their statutory right to reject benefits under the Plan and to litigate their medical negligence claim against the Hospital. Second, the order denies them their constitutional right of access to courts. Third, the order interferes with their constitutional right of privacy. The Andersons’ first two points are closely related, and we consider them together below. Based on our disposition of the Andersons’ first two arguments, we need not consider their third argument.
 

 We conclude that the statutory provisions composing the Plan do not require the ALJ to determine the amount of compensation available before the Andersons can reject their benefits under the Plan and elect to proceed with a civil action against the Hospital. To phrase our conclusion in terms of the Hospital’s suggested analogy, the Andersons need not stop to weigh the proverbial bird in their hands before they release it to pursue multiple birds in the bush.
 

 Section 766.304 provides the ALJ with exclusive jurisdiction to determine whether a claim is compensable under the Plan. In making that determination, section 766.309(1) requires the ALJ to make the following findings:
 

 (a) Whether the injury claimed is a birth-related neurological injury....
 

 (b) Whether obstetrical services were delivered by a participating physician in the course of labor, delivery, or resuscitation in the immediate postdelivery period in a hospital....
 

 (c) How much compensation, if any, is awardable pursuant to s. 766.31.
 

 
 *1099
 
 In addition, the ALJ has exclusive jurisdiction to determine whether the participating physicians complied with the notice provisions of the Plan.
 
 See Weinstock v. Houvardas,
 
 924 So.2d 982, 985 (Fla. 2d DCA 2006) (holding “that under the 2003 Act, the ALJ has exclusive jurisdiction to determine whether notice of a health provider’s participation in NICA was properly given in accordance with section 766.316”).
 
 [2]
 

 We note that section 766.304 provides that “[n]o civil action may be brought until the determinations under s. 766.309 have been made by the administrative law judge.” However, the Plan’s provisions also permit the ALJ to bifurcate the proceedings. Section 766.309(4) provides as follows:
 

 If it is in the interest of judicial economy or if requested to by the claimant, the administrative law judge may bifurcate the proceeding addressing com-pensability and notice pursuant to s. 766.316 first, and addressing an award pursuant to s. 766.31,
 
 if any,
 
 in a separate proceeding.
 
 The administrative law judge may issue a final order on compensability and notice which is subject to appeal under s. 766.311, prior to issuance of an award pursuant to s. 766.31.
 

 (Emphasis added.) Thus the authorization in section 766.309(4) for the bifurcation of the proceedings suggests that the ALJ is not required to make a determination of the amount of an award unless and until such a determination becomes necessary.
 

 The Hospital argues that section 766.304 requires the ALJ to make the necessary determinations under section 766.309, including the amount of any award, before the claimant may proceed with a civil action. To be sure, section 766.309(1)(c) directs the ALJ to determine the amount of compensation awardable. Nevertheless, section 766.309(4) allows the ALJ to bifurcate the administrative proceedings to make an initial determination of compensability and notice before determining the amount of any award.
 
 [3]
 
 Thus the determination of the amount of an award becomes unnecessary if the claimant decides to reject any benefits under the Plan after the compensability and notice issues have been determined. As we noted in
 
 All Children’s Hospital, Inc. v. Department of Administrative Hearings,
 
 863 So.2d 450, 456 (Fla. 2d DCA 2004),
 
 quashed on other grounds by Florida Birthr-Related Neurological Injury Compensation Ass’n v. Florida Division of Administrative Hearings,
 
 948 So.2d 705 (Fla.2007):
 

 [Wjhere the potential claimant wishes to pursue tort remedies and to forgo any compensation from the plan, the task of the ALJ is limited to determining whether the injuries were compensable under section 766.309(1).... [Wjhere the claimant seeks compensation from the plan, once an injury is determined to be compensable, the ALJ must go on to determine the amount of compensation that is awardable.
 
 See
 
 §§ 766.309(1)(c), 31.
 

 Thus we agree with the Andersons’ argument that section 766.309(4) allows the ALJ to decline as unnecessary a determination of the amount of compensation awardable if the claimant decides to reject
 
 *1100
 
 all benefits under the Plan after a determination of compensability and notice.
 

 Here, the ALJ has determined that the Andersons’ claim is compensable and that the Hospital does not have a right to assert the exclusivity of remedy provision of the Plan because it failed to give the requisite notice. For this reason, the Andersons have the right to elect their remedy and to accept compensation under the Plan or to pursue their civil claim against the Hospital.
 
 See Fla. Birth-Related Neurological Injury Comp. Ass’n v. Dep’t of Admin. Hearings,
 
 29 So.3d 992, 999 (Fla.2010) (holding that where one participating physician and/or the hospital gave notice and another did not, “the claimant can either (1) accept NICA remedies and forgo any civil suit against any other person or entity involved in the labor or delivery, or (2) pursue a civil suit only against the person or entity who failed to give notice and forgo any remedies under NICA”). The effect of the circuit court’s order is to require the Andersons to satisfy an unauthorized condition precedent to their civil action. It follows that the order improperly deprives the Andersons of — or at least delays the exercise of — their right to reject benefits under the Plan and to litigate their medical negligence claim in the circuit court.
 
 See Relinger,
 
 55 So.3d at 640 (“The courts do not favor abatement, and ‘the party asserting it must clearly show that he is within the reason for its enforcement.’ ” (quoting
 
 Moresca v. Allstate Ins. Co.,
 
 231 So.2d 283, 285 (Fla. 4th DCA 1970))). Because the statutory provisions of the Plan do not mandate a determination of the amount of compensation if the claimant elects to reject compensation under the Plan and to pursue a civil claim, the circuit court’s order departs from the essential requirements of the law by refusing to lift the abatement of the pending civil action.
 

 The Hospital insists that a determination of the amount of compensation awardable is necessary for the Andersons to evaluate whether to accept compensation under the Plan or to reject compensation and pursue their civil claim against the Hospital. But the ALJ has already determined that the Hospital is not entitled to assert the exclusivity of remedy provision of the Plan under section 766.303 because it failed to provide the requisite notice under section 766.316. It follows that the Hospital lacks standing to seek an additional determination by the ALJ on behalf of the Andersons.
 
 See White v. Fla. Birth Related Neurological,
 
 655 So.2d 1292, 1296-97 (Fla. 5th DCA 1995) (holding that participating physicians under the Plan had “no authority or standing to maintain ... claims for compensation” on behalf of infant suffering birth-related neurological injuries; the election of remedies is in “the exclusive province of the infant’s legal representative”);
 
 cf. Malloy v. Gunster, Yoakley, Valdes-Fauli & Stewart, P.A.,
 
 850 So.2d 578, 581 (Fla. 2d DCA 2003) (holding that a law firm could not assert its codefendant’s bankruptcy as grounds to stay civil proceedings against the law firm and its codefendant when the plaintiffs had obtained relief from the bankruptcy stay to liquidate their claims against the codefendant and the codefendant was not seeking the protection of the stay).
 

 Moreover, the Andersons can evaluate whether they wish to accept compensation under the Plan or to pursue a civil claim against the Hospital based upon the advice of their counsel. They have elected to reject compensation under the Plan and to pursue their civil remedy. If the Andersons needed information about the benefits available under the Plan to make their decision, then they could have sought such a determination from the ALJ before rejecting benefits under the Plan. Because the Andersons have already decided
 
 *1101
 
 not to accept any benefits under the Plan, the determination of the amount of available benefits under the Plan would not have any impact on the pending civil action.
 
 See Rowell,
 
 342 So.2d at 150 (holding that the abatement of an action pending resolution of another action constituted a departure from the essential requirements of the law when the petitioner was “not a party to the action on which the stay of this case [was] predicated; disposition of that ease evidently [would] be further delayed by appellate proceedings; and
 
 there [was] no clear likelihood that this case [would] be controlled by the re-’ suits of the other
 
 ” (emphasis added)). Finally, to compel the Andersons at this point to seek a determination of the amount of the benefits available under the Plan before proceeding with the civil action would be an obvious waste of scarce judicial resources.
 

 For the foregoing reasons, we grant the Andersons’ petition, quash the circuit court’s order denying their motion to lift abatement, and remand this case for further proceedings.
 

 Petition granted, order quashed, and case remanded for further proceedings.
 

 WHATLEY and VILLANTI, JJ., Concur.
 

 [1]
 

 . §§ 766.301-.316, Fla. Stat. (2004) (providing for "compensation, on a no-fault basis, for a limited class of catastrophic[, birth-related neurological] injuries” and establishing "the Florida Birth-Related Neurological Injury Compensation Association” (NICA) to administer the Plan).
 

 [2]
 

 . Effective May 2, 2006, the legislature amended section 766.309(1) to add subsection (d), which specifically provides that the AU shall determine “[w]hether, if raised by the claimant or other party, the factual determinations regarding the notice requirements in s. 766.316 are satisfied. The [AL3] has the exclusive jurisdiction to make these factual determinations.” Ch. 06-8, §§ 1, 4, at 194-95, Laws of Fla.
 

 [3]
 

 . The initial determination of compensability and notice results in the entry of an appeal-able order.